After advisement, the following opinions were delivered:
By the Chancellor.
This is a writ of error brought by one of the defendants in an ejectment suit which was prosecuted against him and his co-defendant in the court below by Kimball & Rowe, to recover a lot of land in a patent of 5,000 acres granted by the colonial government, on the 26th of June, 1769, to Francis Legge, a reduced officer of the French war, for military services. The plaintiff in error, and Kimball, who is made a joint defendant in the writ of error with Rowe, in whose favor judgment was given in the court below, appear to be at cross purposes in this court. It appears by the record, that Kimball & Rowe, who were plaintiffs *in the court below, made separate and distinct claims to the [ ' 264 ] premises in question, by several counts in the declaration, as authorized by the Revised Statutes; and that a verdict was found in favor of Rowe, but against Kimball. Judgment was therefore given against the plaintiff in error in favor of Rowe, upon the verdict in favor of the latter ; and for the plaintiff in error against Kimball. Brown, nevertheless, brings this writ of error against both of the original plaintiffs, and assigns for error that the judgment was given in the court below in favor of both ; and he therefore prays for a reversal of the whole judgment. Kimball, on the contrary, unites with Rowe in the joinder in error, and prays that the judgment against himself, as well as that part of it which is in favor of Rowe, may be affirmed. Upon this state of the case, it follows, of course, that the judgment must be affirmed as to Kimball, unless the plaintiff in error has satisfied the court that he has been or may be injured by this judgment in his own favor against Kimball, even if it should turn out that the judgment in favor of Rowe was erroneous.
Rowe claimed title to the premises in question as the immediate grantee of Legge the patentee, by virtue of the supposed deed of the 3rd of January, 1770, for the whole patent; and the principal question discussed on the argument here, was as to the probable validity of that deed, from the facts given in evidence upon the trial, and the appearance of the deed itself, and the language of the instrument in reference to certain supposed matters of public history. These matters were all proper to be discussed before the jury upon the trial of the cause; or upon an application to the supreme *202 court for a new trial, if the verdict was against the weight of evidence. But it was the province of the jury to decide all questions of fact which arose in the cause, and this court has no jurisdiction to review their decision upon a writ of error, whatever our opinion may be as to the correctness of the conclusion at which they arrived upon the matter of fact. The judgment of the supreme court must, therefore, be affirmed, unless [ *265 ] the judge who tried the cause has made some mistake *in matters of law which were calculated to prejudice the plaintiff in error.
The objections to the admissibility of the depositions of some of the witnesses examined under the commission, that it did not appear from the return itself that they had been examined upon all the cross interrogatories, certainly was not sustainable after the testimony given on the subject at the circuit. The cases cited from Washington's Circuit Court Reports, show that the objection was well taken in the first instance. The witnesses should undoubtedly be examined upon all the interrogatories and the cross interrogatories allowed by the proper officer and annexed to the commission; but as there is no positive statutory regulation on the subject, it was certainly competent for the plaintiff to prove that the counsel for the adverse party was present at the execution of the commission, and either expressly or tacitly waived the taking down the answers of the witnesses to interrogatories, when nothing was elicited by the questions which could be of any use to either party. The witness testifying on that subject, in answer to an interrogatory from the judge, stated positively that every inquiry was put, and the answer, if deemed material by any one, was written down. He also said the depositions were all written down by the commissioners, and then, in presence of the counsel for both parties, read over to the witnesses before they were signed. From this statement of the manner of executing the commission, there does not appear to be any ground or doubt as to the correctness of the decision of the court below upon this point.
• The deed was sufficiently proved to entitle it to be read in evidence, according to the settled law of this state. Both subscribing witnesses to the deed were dead; and in such cases, proof of their hand-writing is sufficient evidence to authorize the deed to be read to the jury, without proof of the hand-writing of the grantor. Such was the decision of the supreme court in this state forty years since, in the case of Mott v. Doughty, 1 Johns. Cas. 230. The decision was again repeated by the same court, nine [ *266 ] years afterwards, *in the case of Sluby v. Champlin, 4 Johns. R. 461. In this case, proof of the hand-writing of only one of the subscribing witnesses was sufficient; but there was abundant evidence to establish the genuineness of the signatures of both. The genuine, contained upon its face sufficient evidence, after a lapse of more than sixty years, of the identity of the grantor in the deed as the Francis Legge to whom the *203 patent was granted. The deed was given within seven months after the date of the patent, which is particularly described in the deed; not only by its date and the specific boundaries but also by a reference to the page in the book of patents in the secretary’s office in which the patent was registered. And as the deed was executed in a remote part of the country, which at that time could have had very little intercourse with the place where the public records of this state were kept, these minute details afford strong presumptive evidence that the person who executed the deed in January, 1770, then had the original patent in his possession, and that the recitals were taken from it. This in connection with the testimony of one of the witnesses, that about1 the time of the date of the deed there was living with Dr. Manning, (one of the witnesses,) a man who was called by the name of the patentee-, and who was reputed to be a British officer, was sufficient evidence to go to the jury, even if it had been proved that there was another person bearing the same name. If this testimony is to be credited, there can be but little doubt that the person staying with Dr. Manning was the same person who executed the deed, and that he was the reduced officer of the French war to whom this patent of land, then comparatively valueless, was granted. The deed having been legally proved in the usual way of proving deeds, where all the witnesses to the same are dead, if there were any suspicious circumstances upon the face of the deed, when taken in connection with the historical facts relative to the ancient name of what is now the commonwealth of Massachusetts, they were proper subjects to be taken into consideration by the jury; but could not be decided by the court as matters of law to destroy the deed absolutely.
*1 do not precisely understand what the counsel on the trial [ *267 ] meant by urging as a ground of-non-suit, that the deed was to be considered as dormant. The owner of land may let his deed sleep for ages without losing his title, if there is no person in possession of the land, holding adversely to him. If the counsel only meant to insist that the fact that the grantee had not asserted his title immediately after the land began to be settled on, but on the contrary had permitted the patent to be occupied by squatters for many years, was a circumstance of suspicion as to the genuineness of the deed, the judge was unquestionably right in refusing to non-suit on that ground; as that also was a proper subject for the consideration of the jury.
I concur with the supreme court in the opinion that it was improper to give the declarations of the witnesses in evidence, without giving them, in the first place, an opportunity to explain; and that the fact that the witnesses had been examined under a commission, did not prevent the operation of the principle upon which the rule is founded.
Upon the whole, I am unable to discover that any mistake in law was made by the judge who tried the cause, to the prejudice of the rights of the plain* *204 tiff iü error ; and the jury, who were the constitutional judges as to the facts, have decided the case against him.
I must therefore vote to affirm the judgment of the supreme court.
By Senator Edwards.
The principal points in this case appear to be whether the depositions of the witnesses taken under the commission and objected to, ought to have been read on the trial; and whether the deed from Francis Legge to William Rowe was so proved as .to entitle it to be submitted to the jury.
The principal objection urged against the depositions is that the last cross interrogatory'on the part of the defendants was not answered. This interrogatory was the general one usually put as the concluding interrogatory, for the greater precaution lest the special interrogatories should not elicit all the important facts within the knowledge of the witness. Its [ *268 ] *object is not that the witness should repeat the facts stated by him under the special interrogatories, but to induce him to state such facts as the special interrogatories, in his judgment do not embrace, and is calculated to draw from him the whole truth within his knowledge, which may affect the subject in controversy: and such facts, when so elicited, assume all the importance they would do, were they drawn out on special interrogatories, subject, of course, to the same objections as to their admissibility. So timch importance has been attached to this interrogatory, that when it has not been answered or noticed, in some cases the objection has been held fatal to the whole deposition. Judge Washington, in the case of Dodge v. Israel, 4 Wash. C. C. R. 324, says, “ The objection is fatal to the whole of the deposition, and has been decided in this court more than once. The witness must answer substantially all the interrogatories, as it is otherwise impossible to say that he has told the whole truth.” See also Richardson v. Golden, 3 Wash. C. C. R. 109 ; Graham Pr. 487. But after all, I apprehend the importance of having the answer appear, is to show that the witness has answered all the interrogatories, and thereby to infer that he has told the whole truth within his knowledge. And if this be so, if it dan be made to appear, independent of the interrogatories and answers, that he has revealed all the .facts within his knowledge, or that the interrogatories have all been put to him and answered, the mere fact that some of the answers are not written down, not being desired by either party, should not destroy the whole deposition. The rule should not be enforced so rigidly a's to compel the parties to have taken down improper, impertinent or irrelevant matter, which neither desire, for the purpose of showing to the court that all the interrogatories have been answered. But when the parties are not present before the commissioners, either in person or by counsel, I know of rió discretionary ptrtfer in the commissioners to reject the answers *205 of the witnesses, however impertinent or irrelevant they may be. Should they omit the answers to any of the interrogatories, it appears to me it would be an error that would vitiate the whole deposition; and had this been a case of that description, I should ‘have had no hesitation [ *269 ] in coming to the conclusion that the depositions of the witnesses objected to, ought not to have been read. But this is not such a case. Here both the parties, by their counsel, were present before the commissioners, and participated in the examination as they had a right to do; and it appears from the testimony, every interrogatory was put, and the answer, if deemed material by any one, written down; that when the answers were so written down by the commissioners, the depositions were read over to the witnesses, in the presence of the counsel, and that no objection was made by the counsel for the defendants, that any particular interrogatory was not answered, or that the answer was not written down. Under these circumstances, it seems to me that the irregularity occasioned by the neglect of the commissioners to write the answers of the witnesses to the last interrogatory, which must otherwise have proved fatal to the whole deposition, was waived altogether, and did not vitiate it; and that the judge was right in permitting the depositions to be read to the jury. I see no impropriety in permitting parties, when they both appear before the commissioners in person or by their counsel, to waive such answers to the interrogatories as they may mutually agree upon, or for either party or his counsel to waive the answer to his own interrogatory or cross interrogatory, if such answer is not required to be taken down by the opposite party ; but he should not be permitted to waive it unless the opposite party or his counsel is present before the commissioners at the time of executing the commission, and interposes no objection to such waiver.
The next question is, ought the deed of Francis Legge to William Rowe to have been read in evidence and submitted to the jury. The rule as it once existed for proving an instrument attested by subscribing witnesses, as laid down by Lord Kenyon, and assented to by his able associates, Ashurst, Grose and Lawrence, in the case of Barnes v. Trompowsky, 7 T. R. 265, was that every instrument, whether under seal or not, the execution of which is witnessed, must be proved in the same manner, regularly by the witness himself, if living; if dead, by proving his hand-writing; if residing *abroad by sending out a commission to examine him, or at [ *270 ] least, by proving his hand-writing, which last the learned judge remarks, is indeed a relaxation of the old rule, and admitted only of late years; and so well was this rule then considered to be established that the learned Chief Justice refused to hear an argument upon it.
In the case of Adams v. Kers, 1 Bos. & Pul. 360, Buller, J., says, “ Where a witness is dead, the,course is to prove his hand-writing. In this *206 case one of the attesting witnesses was dead, and the other was beyond the reach of the process of the court, the best evidence, therefore, that could be obtained was given. The hand-writing of the obligor need not be proved; that of the attesting witness, when proved is evidence of every thing on the face of the paper which imports to be sealed by the party.” See also Milward v. Temple, 1 Campb. 375. The rule prescribing the order for proving the execution of instruments which have attesting witnesses, seems to be now essentially the same as it was when the decisions to which I have alluded were made : First. The subscribing witness is to be called ; Secondly. If he be dead, out of the jurisdiction of the court, or in any manner incapacitated, or cannot be found, after diligent search, proof of his hand-writing is to be produced; and if none of these requisites can be complied with, in the third and last place, proof of the hand-writing of the party who executed the instrument may be produced.
On proving the death of subscribing witnesses and their hand-writing, I think the party is entitled to have the instrument thus proved submitted to the jury, and that it is not in the province of the judge to reject it. If, however, there are suspicious circumstances attending the instrument, it may be necessary to take the precaution to rebut them by proving, in addition, the identity of the person executing the instrument or his hand-writing. Buller, in his nisi prius, 255, says, that if there is any erasure or interlineation in an old.deed, giving an appearance of fraud, it ought to be proved in the regular manner, by the subscribing witness; or if he be dead, by proof of such death, his hand-writing and the hand-writing of the party ex- [ *271 ] cubing it. See also, 1 Saund. *Pl. & Ev. 518. But I presume the learned judge did not mean to be understood that on proof of the death of the subscribing witness, and his hand-writing, the deed should not be submitted to the jury as testimony, without proving also the handwriting of the party who executed it. He might think, by way of precaution, it should be proved, to counteract the presumption of fraud, yet in the absence of such proof, I apprehend he would not have deemed himself justified in pronouncing the deed fraudulent and void. When proof, is made of the death of a subscribing witness, and of his hand-writing, the law infers that if such witness were present in court he would prove the exeeution of the instrument; and such testimony, while un-invalidated by other proof, though at best but circumstantial evidence, is held sufficient. But, says Marshal, C. J., in Murdock v. Hunter, 1 Brackenbrough's R. 140, “ Whatever deducts from it may and ought to be weighed against it. It is always adviseable, therefore, to support it by other testimony, if such other testimony be in the power of the plaintiff. So in the case of Whitlock v. Musgrove, 1 Cromp. & Mees. R. 511, where a note was signed by a mark, in addition to the usual proof, the proof of the identity seemed to be necessary. *207 Where there is an erasure, or interlineation in a material part of a written instrument, and no notice taken of it at the time of executing the instrument, it may be considered as a suspicious circumstance, and a party may introduce explanatory proof; but the proof of the execution of the instrument, the suspicious circumstances attending it, and the explanatory testimony are all proper subjects to be submitted to the jury; and because the party relying upon the validity of the instrument is not able to introduce explanatory proof, or does not choose to do so, after making the usual proof, he is not to be deprived of the benefit of the verdict of a jury. He ought to be permitted to submit his cause without such proof, and seek a verdict of the jury as to the validity of the instrument under which he claims, if he chooses to do so. If the rule contended for, on the part of the plaintiffs in error, should prevail, whenever there was a material interlineation or erasure in a written instrument, or other circumstances of suspicion, which *could not be explained, it would be in the power of the [ *272 ] judge and in fine, it would be his duty to pronounce such instrument void, for the want of such proof, and withhold it from the consideration of the jury. I cannot accede to the correctness or propriety of a doctrine which must be fraught with such pernicious and disastrous consequences. I think the judge was right in refusing the nonsuit, and in submitting the deed and testimony to the jury.
As to the proposition of the defendants counsel to prove the declarations of some of the witnesses whose testimony had been taken under the commission, made after the execution of it, contradicting some of their statements, I think under the circumstances of such case, the judge was right in rejecting the testimony offered, and I am satisfied with the reasoning of the supreme court upon that point. From the view I have taken of the several objections raised by the counsel for the plaintiffs in error, I have found no satisfactory reason for reversing the judgment.
Senator Furman
said he should vote for an affirmance of tne judgment of the supreme court, not perceiving any thing in the facts of this case which in his opinion would justify the witholding the deed from the jury, after proof of the hand-writing of the subscribing witnesses, who were shown to be dead. The use of the term commonwealth in the deed, in reference to its date, excited no suspicion in his mind, as by a slight examination of the provincial statutes of Massachusetts, he had discovered two, in which that term was used: one in 1634, and the other in 1678. Nor was the fact of the year being written on an erasure, sufficient to authorize the judge to withhold the deed from the jury.
By Senator Verplanck.
The facts of this case are peculiar and the ev *208 idence prplexing. It is from this peculiarity and perrplexity of fact and evdence, that the most important legal questions now presented to us, arise. The deed upon which the whole case now turns, and which was submitted for our inspection on the argument, is very suspicious in appear- [ *273 ] anee, from erasures and otherwise, and is besides wholly Unsupported by any possession, continual claim, or even occasional act of ownership over the land on the part of the grantee. The use of the phrase “ commonwealth aforesaid,” in the printed part of the deed, referring to the words “ province of Massachusetts Bay,” in the written filling up of the preceding blank, is certainly not at all to be expected in a deed dated in 1770 ; and raises a very strong presumption that the deed was printed and filled up after 1776. It is possible that this might be accounted for, from the old familiar ideas of independence and republicanism entertained by the puritans and their decendants in New-England, ever since the days of the English commonwealth; still the occasional use of the word commonwealth, as applied to the province or colony, in state papers or official compositions admitting of some latitude of language, such as were cited on the argument, is scarcely sufficient to show any such familiar, common and technical use as that in this deed. The form having been printed, if this deed be genuine, similar deeds of the same period are in all probability still to be found or are on record. The absence of proof to that effect when the attention of the parties had been previously drawn to the subject, greatly strengthens the doubts as to this deed. The doubt here does not rest merely on negative presumption ; it appeared in evidence on the trial that on search in the recording office in Massachusetts, of the district in which the parties to this deed are stated to have lived, the word commonwealth is not found to have been used in any deed there recorded from 1765 until 1780, when it first makes its appearance. Under these circumstances of suspicion, from many causes, almost amounting when combined, to the prima facie evidence of the instument being fraudulent, I do not think the mere proof of the hand-writing of the deceased witnesses, to be sufficient evidence of the due execution of the deed. The identity of the grantor, at least, ought to have been proved.
Our decisions and practice do not ordinarily require such additional proof, when the subscribing witness is dead, though there is high authority, and no small weight of reason for prescribing this as the universal rule. [ *274 ] But our courts in this *state have held that the proof of the deceased subscribing witnesses’ signature, ought ordinarily to be sufficient. The presumption is that the subscribing witness would hot have attested the execution by any other person than the one described. But I think this only goes to the extent of presumptive or prima facie proof when uncontradicted. When the signature of a witness now deceased is proved, the presumption is, for want of better evidence, that he knew the grantor *209 and that the deed was fairly executed and acknowledged. But it can be no more than mere presumption ; and it there he on the face of the instrument, or in evidence directly bearing on its validity, anything to raise a counter presumption of fraud or even of doubt, something more seems necessary to give weight and authority to the naked signature. If the witness had been living and present, his testimony would be insuEcient, if he was unable or unwilling to testify to the identity of the grantor or obligor, if required. 2 Starkie's R. 239. 4 Camp. R. Buller N. P. 171, b. In the words of Judge Bayley: “ It frequently happens that a subscribing witness says that he saw a bond executed, but that he did not know the person who executed it to be the party. What is the consequence ? It is not presumed that he was the party, but the plaintiff is non-suited.” 1 Cromp. & Mees. R. 519. The same rule of evidence has in effect, been recognized in our Revised Statutes, in enacting that “ Every conveyance proved in the manner prescribed, may be read in evidence without further proof.” 1 R. S. 759. But “ the manner prescribed is, that in order to entitle a deed to be recorded, or when proved, to be used in evidence without the presence of the witness, is this : “ Every subscribing witness shall state (on oath, before the proper oficer,) that he knew the person described in and who executed such conveyance.” 1 R. S. 757. But in the case of a deceased witness to a deed not thus proved, our authorities and usage require his signature when proved, to authorize the presumption that the grantor who signs, was known to be the person described. Yet if that presumption is met by a contradictory presumption, or by evidence making the identity quite uncertain, the want of the positive attestation by the witness, such as he would *be obliged to give if living and present, should in reason as well.« [ *275 ] as in conformity to our usage and our statute, be supplied from some other quarter. The highest authorities for the admission of deeds upon the mere proof of the signature of dead or absent witnesses, do not I think, claim more than this prima fade presumption. Thus Lord Ellenborough, 1 Barn. & Ald. 20, in one of the leading authorities for the admission of such evidence as suEcient, says: “ I should think in all cases it is prima facie evidence of an instrument having been executed by the person whose name it bears.” The cases in our own courts, 1 Johns. Cas. 230, & 4 Johns. R. 461, do not employ this express language, but they, in effect, go farther than this. But in a case in equity, reasons of mere doubt and uncertainty, less strong than the suspicious circumstances in the present case, were thought by Chief Justice Marshall ¡to require further evidence than the naked proof of the attesting witness’ signature, unless there could be shewn some satisfactory explanation. 1 Brock. R. 138.
I consider the same reasons applied to stronger circumstances of suspicion as governing this case. These doubts might have been removed by evidence *210 directly refuting or explaining them, as the erasures in a deed may be shewn to have been made by some third person. But if these circumstances stand unexplained and unrefuted, then the court is bound in justice to the defendants to demand some additional evidence. In this case, that of the grant- or’s identity might have been sufficient, if proved from some extrinsic facts or circumstances, as was done in Nelson v. Whittall, 1 Barn, & Ald. 20, above cited. The evidence of the obligor or grantor’s hand-writing is yet higher and more satisfactory, as it necessarily involves the proof of identity. Justice seems to require such additional evidence in this case, and the precedent strikes me as useful in establishing a sound general rule. Such a rule will best conciliate the conflicting authorities and reasons on this head of evidence, entitled as they arc on both sides of the question, to much consideration and respect. On the one hand it would generally be of great and needless inconvenience, and sometimes tend to gross [ *276 ] ‘injustice to require in addition to the proof of the attesting witness’ signature, further evidence of the grantor’s or obligor’s hand-writing or of his identity, which may commonly be reasonably presumed. In England this practice has obtained and been supported on the ground of the great inconvenience of the stricter rule in most cases, though that strict rule has the sanction of Lyndhurst, Bayley, and the whole court of exchequer. But, as Lord Tenierdpn has urged, “ it would, on that rule, be frequently impossible to recover on a bond where the attesting witness was dead.” The s< practice,” therefore, in England, as Chief Justice Best informs us, 1 M. & Mee. 176, and here, as Chief Justice Nelson states, is not (o require further proof. But on the other hand, when the presumption raised by this prima facie evidence (as Lord Ellenborough expressly regarded it,) is met by other accompanying presumptions, throwing suspicion or even doubt upon the authority of the instrument or the grantor’s or obligor’s identity, from the contents, the incongruities, the improbabilities, or erasures, or appearance of the instrument, or from any external evidence, reason and prudence require that the deed or bond should not be admitted as evidence of its own contents until it receive some other positive attestation equivalent in effect to that which the living attesting witness would have been called upon to give either at the trial, or in order to entitle a deed to be recorded, and to be used in evidence without further proof in his absence or after his death. Such causes of suspicion are so rare that the practical inconveniences apprehended from requiring the highest evidence in all ordinary cases would not follow', if such evidence were required only when these causes occur.
I conclude, therefore, that this judgment should be reversed, on the ground of the deed being such on its face as to demand additional evidence, either *211 to explain the suspicious circumstances apparent in it, or to prove the identity of the grantor.
In respect to the objection to the receiving in evidence the depositions taken under a commission, because no answer appears to the last general cross interrogatory, I concur in opinion with the Chief Justice, and think that this omission, "though irregular, could not, under [ *277 ] the circumstances of the case, be taken advantage of at the trial.
On the question being put, Shall this judgment he reversed ? the members of the court divided as follows:
In the affirmative: Senators Dixon, Ely, Hopkins, Lee, Maynard, Moseley, ¡Nicholas, Peck, Tallmadgb, Van Dyok, Verplanck—11.
In the negative: The Chancellor and Senators Edwards, Furman, Hull, Hunter, Livingston, Paige, Root, Wager—9
Whereupon the judgment of the supreme court was reversed.