Comstock, J.
The testimony of Adams, the witness by whom the principal facts in the case were proved, has been commented upon by the appellant’s crunsel as unworthy *497 of credit, and it certainly presents an account of the transaction not altogether satisfactory. The jury, however, under proper instructions, have passed upon his evidence, and we must take the case as he states it. This court has no power to entertain questions of the credibility of evidence; and even where a witness delivers contradictory or inconsistent statements, and the jury have thought proper to believe one of them in preference to another, we have no right to interfere. It is to be assumed, therefore, that the plaintiffs were the owners of the brig Venus, and were entitled to the moneys in question arising from the condemnation and sale of the vessel in Brazilj and that by an arrangement with Adams, who was the master, the defendant received the money, agreeing, after retaining a certain sum on account of a previous loan to Adams, to take or transmit the balance to the wife of the latter in Massachusetts, where the plaintiffs also resided, for their benefit. The object of the remittance to Mrs. Adams was to place the money where the plaintiffs would get it, although it does not appear that this vras mentioned in the arrangement made with the defendant.
Upon these'facts no demand was necessary in order to maintain the action. The defendant received the fund under a positive duty to remit, and having violated that, duty he became immediately liable. He may not have known that the remittance was to be made ultimately on account of the plaintiffs, and it may be that he had never heard of them. This can make no difference. He was not, in any point of view, to hold the money until called for, but was to send it forward. It is no answer to an action of this character tlfat a demand has not been made, unless there is something in the agreement under which the money was received, or in the circumstances attending the deposit, implying a right or duty to hold it until actually called for by the owner.
The necessity of a demand has been argued from a letter oí the defendant to the 2>laintiffs, written more than two years after the transaction. If that letter had been the only *498 evidence of the defendant’s possession of the fund and of the terms or instructions under which he received it, a demand would probably have been necessary. But the facts which have been stated were proved, as the jury have found, by other testimony, and the letter did not weaken their force.
The question of interest depends essentially upon the same considerations. If the defendant received the money, not upon any trust to hold it for the parties to whom it belonged, but under instructions to remit, the right to recover interest cannot be questioned. The failure to remit according to the arrangement testified to by Adams fully justified a presumption that the fund had been converted by the recipient.
The testimony of the witness, Adams, had been taken de bene esse, under the statute, and was read at the trial on the part of the plaintiffs. After they had rested, relying, as it would seém, mainly upon this evidence, the defendant offered to prove conversations with that witness after his examination, in which he confessed that his evidence was false; that he had given it under threats; that he regretted what he had sworn to, &c. It was further offered to be shown that in these conversations Adams gave an account of the transaction in question wholly inconsistent with his testimony, but consistent with what he had said about the time the facts occurred. It has been strenuously and ably argued that the judge erred in excluding the evidence so offered.
The rule does not appear to be uniform in all the states that, in order to.impeach a witness by proving previous declarations made by him inconsistent with his evidence, he must first be interrogated as to what he has said. (17 Mass., 160; 6 N. H., 465; 5 Conn., 557; 8 Greenl., 42.) It prevails, however,-' so generally that the cases which are the other way cannot how be considered as authority. The doctrine is well settled in England, and in this state it has now become so familiar that the authorities need not be cited.
*499 The appellant’s counsel, conceding the existence of the rule, relies upon two circumstances to relieve the present case from its influence. The first is, that the evidence of Ú the witness sought to be impeached was taken before the trial in the form of a deposition, which being read at the trial of course implied that the witness was not present, and that his attendance could not be procured at that time. The second is, that the declarations and statements offered to be proved were made after the witness had testified, and were a direct admission that he had sworn falsely.
If the rule in question is founded upon any good reason (and'of this we do not admit a doubt), there can be none for discriminating in the case of a deposition taken before the trial. If the party against whom the witness is examined knows of the inconsistent statements which he expects to prove at the trial, he can attend and propose such interrogatories as the rule requires in order to lay the proper foundation for the intended impeachment. If he does not know at the time, but the statements come to his knowledge afterwards and before the trial, he can apply for a commission or move a postponement until the evidence can -be procured,"if he thinks it material to his case. The mere absence of the witness- has never been considered a reason for allowing his unsworn statements to be proved in order to affect his credibility. Suppose the evidence, instead of being taken in the form of a deposition, is delivered at the trial, and the witness has left the court before the other party is aware that he has made inconsistent declarations which may tend to discredit him: every lawyer knows that this is of frequent occurrence at the circuit, but the rule in question has never yielded to this exigency; on the contrary, such a case has been put as the very strongest illustration of "the fitness and necessity of the rule itself. (The Queen's case, 2 Brod. & Bing., 314, 6 Eng. Com. L., 161.) The principle on which the practice essentially rests is, that both the party and the witness are entitled of right to *500 any explanation which the latter can give of the statements imputed to him. When the witness is present he can he recalled by the same party for the purpose of explanation, after the impeachment has been attempted, but if he happen to be absent then the right is obviously lost. And .this is the very reason assigned by the twelve judges, in the Queen's case, why the party proposing to give the declarations in evidence should first, in all cases, interrogate the witness who is alleged to, have made them. It becomes very evident, then, that the rule should not be relaxed where a deposition has been taken, and is read at the trial, for the very reason that the personal attendance of the witness cannot be pro.cured. (25 Wend., 259.)
Nor can we, in the present ca.se, admit a distinction founded on the circumstance that the admissions of the witness were made, as alleged, after he had been examined. I cannot perceive that the reasons on which the rule in question is founded lose, any of their force in such a case. And not only do those remain unimpaired, but there is an additional one to, be found in the temptation held out to tamper with witnesses after their evidence has been given. I can, conceive of nothing more dangerous in principle than the doctrine contended for, When a witness, has been examined and cross-examined, if we allow him'to be approached afterwards and declarations to be drawn from him inconsistent with his testimony, and then receive those in evidence without the protection which the rule affords, there will be no safety in trials. When the first experiment of this kind shall be sanctioned by the courts, there is no doubt that it will be often repeated-, and with greater or less success.
The case of The People v. Moore (15 Wend., 419.) is not an authority for such a doctrine. In that case, a witness for the prisoner had refused to be cross-examined .and was committed for a contempt. After the commitment she admitted in the jail substantially that her evidence was false, and the prosecution was allowed to prove what she *501 had said. The prisoner was convicted. On motion for a new trial, Chief Justice Savage said, obiter oí course, that the ruling on this point was right; but the conviction was set aside on other grounds. The ruling may perhaps have been right, for the particular reason that it would be a useless proceeding to recall the witness, she having refused to testify. There is no other ground on which the dictum can be sustained. But it was not placed on this ground. The remarks of the chief justice were these: “The testimony of the declarations of the witness after her commitment were properly admitted. The rule is, that what a witness has said at another time on the same subject may be shown to impeach him, and when impeached similar testimony may be given to support him. It can malee no difference at what time these declarations have been made as to the competency of such testimony, though it may make much as to the effect of it.” From this extract it is quite evident that the learned chief justice, instead of attempting to withdraw that case from the general rule on the subject, ignored the rule itself. His attention may not have been called to it. I think it was not then so well understood as it is now.
The only remaining question which has been argued relates to the admissibility in evidence of the defendant’s letters, dated the 6th of April and 4th of May, 1853. These were offered, as the case states, to show the estimation in which the defendant held the witness, Adams, and they certainly had no relation to the issue upon trial. The attempt to impeach the credit of that witness by proving his declarations, as we have seen, had been overruled, but his cross-examination was evidently conducted with reference to that object. This rendered it competent for the plaintiffs to sustain him, if they could, by proving any conduct or declarations of the defendant evincing that he held the witness in estimation as an honest and worthy man.' The letters in question were written to the witness himself several months after he had been examined in this suit, and *502 given, as was claimed, a false and perjured account of the transaction. They have some tendency to show that the defendant considered him to be a person worthy of confidence. Indeéd, it is difficult to account for the correspondence at all, if we assume that the defendant then regarded the witness and his testimony alike false, as he afterwards found it necessary to insist at the trial. These considerations were entitled to some weight with the jury, and on the whole we think there was no error in allowing the letter to be read.
The judgment should be affirmed.
Wright, J.
But three of the numerous exceptions taken on the trial were urged on the argument, and to those my examination will be confined.
The evidence of Adams, in connection with the letter of the defendant of the 17th September, 1852, established a clear right in the plaintiffs to recover the balance of the proceeds of the sale of the- brig Venus, after deducting the money advanced to Adams at Rio Janeiro. The defendant had. obtained.the money from Maxwell, Wright & Go., in 1850,- with the understanding that he was to reimburse himself .therefrom the amount loaned to Adams, -and remit the balance to Mrs. Adams for the benefit of the plaintiffs. The plaintiffs were the owners of the condemned vessel, and entitled to the fund arising from her sale. Indeed, their right to this balance was conceded by the defendant in his letter of September, 1852. He had no claim on it; though when this suit was commenced he had retained it in his hands-more than two years and a half, instead of forwarding it to the wife of Adams, for the plaintiffs’ benefit, as he had undertaken to do. The special defence alleged in the answer remained unproved; and the evidence wholly failed to show any title in the defendant to the money or any justification for retaining it from the plaintiffs.
The errors urged to have been committed relate, First. To the exclusion of evidence;' Second. To the admission *503 of irrelevant testimony; and, Third. In holding that the plaintiffs could recover without demand.
First. The case states that, at the close of the evidence on both sides, a motion was made to dismiss the complaint on the ground that there was no evidence of a demand of the money in question from the defendant, or a refusal to pay it over before the commencement of the aetion. The plaintiffs were entitled to recover without a formal demand before bringing their action. They were the owners of the fund, and more than two years previously the defendant had obtained it, on the order of Adams, and agreed to remit it for their benefit. Two months prior to the commencement .of the action, the defendant admitted, in effect, if not in terms, the plaintiffs’ ownership of the fund, his receipt thereof and engagement to remit. He had kept it in his hands for over two years, under the pretext that he would have remitted it had he not been otherwise instructed. The naked case is presented of a person admitting himself to have the funds of another in' his hands, subject to his order, and for which he is obligated to account. The duty which he owed to the plaintiffs was to pay over the money; and, neglecting to do so, the latter could recover without showing affirmatively a formal demand before suit brought.
Second. The plaintiffs were permitted to read in evidence two letters from the defendant to Adams, the witness, dated 6th April and 4th May, 18-53. The first of these letters urged Adams to be at the defendant’s office, in New-York, without fail, on the ninth April; and the other apprised him that, if he were in New-York the day the letter was written, he could give him a situation and would be able to keep it for him until the Monday following. It is difficult 1o perceive in what way these letters were material or pertinent to the issue on trial.. The case states that they were offered to show the estimation in which the defendant held the witness, Adams. But that was a question entirely *504 immaterial, even if they tended to show anything decisive on that point. It was no reason- for introducing them that the defendant had attempted to discredit the wdtness. But it does not follow that, though the evidence was immaterial and irrelevant, and such as should have been kept out of the case, the defendant is entitled necessarily to have the judgment reversed. We can see that he could not have been in' the slightest degree prejudiced by allowing the letters to be read to the jury. Again, the objection taken by the defendant was of the most general character. He objected to the letters as evidence, without assigning any ground on which the objection was predicated. We are told now that the evidence was wholly immaterial, impertinent and foreign to the issue, and equally irrelevant on the question as to Adams’ credibility; but these grounds were not specifically assumed before the judge. The defendant contented himself with a general objection to the letters as evidence, without specifying any reason to exclude them. Failing to direct the mind of the judge to the specific grounds, the general objection is not now available to disturb the judgment.
Third. The witness, Adams, who resided in Massachusetts, was not present at the trial. He had been examined de bene esse in January, 1853. At the close of the plaintiffs’ case, the defendant offered to show that, in conversations with the witness subsequent to the examination, Adams declared that his testimony, taken de bene esse, was false, and that he had given it under threats from the plaintiffs. It was further offered to prove that, in such conversations, he made statements in relation to the transaction with the defendant opposed to and inconsistent with the version given in the examination that had been read in evidence. I know of no rule of law or practice of the courts of this state which sanctions the admissibility of the proposed evidence. Adams had been examined as a witness on the part of the plaintiffs conditionally, and with notice to the adverse party. The defendant attended and thoroughly cross-examined him. *505 The statute gives the same effect to the deposition, and no other, as the oral testimony of the witness would have if given on the trial. (2 R. S., 393.) The defendant proposed to bring the credit of the witness into question, by proof of his statements out of court, without a previous cross-examination as to the matter thereof. Such a practice might, and I think frequently would, work great injustice to the witness or to the party producing him. In the Queen’s case (2 Brod. & Bing., 129), the learned judges to whom the question was submitted were unanimously of the opinion that, according to the usage and practice of the English courts, and the law as administered in those courts, it was not competent to adduce proof of the declarations or acts of the witness, tending to discredit him, without previously cross-examining the witness as to such declarations or acts and affording him an opportunity to meet and explain them; and this, though the.statements or misconduct are assumed to have been made or discovered after, the examination. (1 Greenl. Ev., § 462.) Such, also, it is believed, has been the uniform practice of our own courts. One of the great objects of this course of proceeding, in the language of Chief Justice Abbott, was the prevention of surprise, as far as practicable, upon any person who may appear in our courts.. Nor do we perceive that it should make any difference that the witness was sworn and examined pursuant to the provisions of the statute, and was not actually in attendance at the trial. The practice would work the same injustice to, and be an equal surprise on, the witness and the party in either case. No opportunity would be furnished for explanation. This case is a striking illustration of the impolicy and injustice of the rule contended for by the defendant. Adams was examined conditionally in January, and the trial did not occur until the December following. The declarations offered to be proved were made in conversations occurring in June or July intermediate, and were known to the defendant. Instead of examining *506 the witness conditionally himself", when the opportunity presented itself after the discovery, or applying to the court to put off the trial on the ground of his absence, the defendant suffered the trial to proceed, taking the chances of success, even as against his testimony. In the absence of the witness, and there being no previous examination touching the matter offered to discredit him, the chief justice was clearly right in excluding the proffered evidence.
The judgment of the superior court should be affirmed.
So far as the opinions differ, the court concurred in that delivered by Judge Comstock.
Judgment affirmed.