White, J.
The original suit was a bill in chancery filed in the court of common pleas of Hamilton county, June 3, 1853, to set aside the alleged will of William Runyan, deceased, late of said county, and which had been admitted to probate. The case was appealed to the district court, and, at the April term, 1861, a verdict and decree was rendered sustaining the will. Several exceptions were taken by counsel for the plaintiff in error to the rulings of the court, on the trial of the issue, which are embodied in a bill of exceptions, and form part of the record sought to b'e reviewed by this proceeding.
1. It appears, by the bill of exceptions, that the contestees offered in evidence the original writing alleged to be the last will and testament of William Runyan, deceased, together with the order of the court of common pleas admitting the same to record, and then rested their case, “ without offering the testimony of the subscribing witnesses to the will.”
The following extracts from the bill of exceptions disclose the grounds of the first assignment of error :
“And, thereupon, the plaintiff in the case, the contestant of the will, introduced a large number of witnesses, who were sworn and testified to facts tending to prove that said testator was of unsound mind, and incapable of understanding or making a will, at the time said will purports to have been executed: also, tending to show that the man who drew the will lived five or six miles from the testator; that he drew it from a •written note presented to him by William Price, one of the devisees, purporting to be written by William Runyan; and tending- to show that said Runyan was incapable of writing a note at the time.
“ And the said contestant having finished the testimony, the defendants in the suit, holding the affirmative of the issue before the jury, offered testimony to prove the competency of the said William Runyan, and Ms sound state of mind, at the date of the making of the will. To the introduction of which testimony the counsel for the contestant objected on the ground that it was incompetent for said propounders of the will, after having rested their case, to bring in new and additional evi *5 dence to prove the competency of the testator to make the will after the contestant had given his testimony; not objecting, however, to the introduction of testimony to rebut the evidence of contestant on matters not connected with the testator’s soundness of mind.
“ Notice was given to the counsel of the propounders of the will, before they rested their case, or testimony in chief, by the counsel for the contestant, that the latter would object to the introduction of such additional testimony to prove the competency of the testator to make a will after the evidence of the contestant should be closed.
“But the court overruled the objection of the contestant, and permitted them [the contestees] to examine the subscribing witnesses to said will, and other witnesses, tending to prove the competency of said testator to make said will.”
The general rules for the introduction of testimony must, necessarily, be so often applied, or relaxed, according to circumstances, apparent only to the court engaged in conducting the trial, that a strict uniformity, at all times, is not to be expected, and, indeed, in some instances would prove injurious to the interests of justice. Much, therefore, is confided to the discretion of that court, which, though it should not be exercised by an arbitrary strictness on the one hand, or arbitrary indulgence and relaxation on the other, should never be withheld from its office in proper cases. 2 Phillips Ev. 878, note 570; Graham, & Co. v. Davis & Co., 4 Ohio St. Rep. 381.
The statute prescribes the mode of contesting a will, as well as the issue to be made up, viz: “ whether the writing produced be the last will of the testator or not;” which is required to be tried by a jury. It further declares, that “ The order of probate shall be prima facie evidence, on the trial of said issue, of the due attestation, execution and validity of said will.” This statutory presumption is as comprehensive in its operation as the issue. The order of probate is a fact submitted to the jury on the trial of the issue; and from this fact flows the presumed existence of every other necessary to establish the validity of the will in question. There are no pleadings *6 to which the evidence must be confined, and, with the allegations of which it must correspond. “There are strictly no parties; both sides are actors, in obedience to the order directing the issue.” In all cases, alike, the will may be assailed upon any and all the grounds that would expose its invalidity. But what particular objections may be supposed to be available, and be offered in evidence, in any given case, can only be known as it may be developed in the testimony offered by those opposing the will. They may relate solely to frauds and undue influence, supposed to have been practiced upon the testator, or to his supposed want of mental capacity, or the absence of due execution on his part, or of the due attestation.
To require those affirming the will either to finally rest their case on the order of probate, or, otherwise, in anticipation of attacks that may or may not in fact be made, to introduce all the evidence they may have sustaining the will, on every ground on which it may be competent for the adverse parties to attack it, would not, in our opinion, promote either the convenience of those charged with the trial, or the justice of the case; but would tend to contrary results.
The’court, therefore, in our opinion, did not err in overruling the objection referred to.
2. It appears, by the. bill of exceptions, that one of the subscribing witnesses (Francis S. Bowen) had deceased before the trial in the district court, “and his testimony, taken before the court of common pleas, when the will was admitted to record, was read.” Whereupon the contestant offered in evidence certain declarations of Bowen respecting the capacity of William Runyan to make a will at the time when the writing in question purports to have been executed. These declarations were made at other times, and, as stated in the bill of exceptions, tended “ to show he had made different statements at different times, as to the condition of said William Runyan, and his capacity to make a will — sometimes asserting he was competent, at other times saying he was incompetent to make a will, at the time the will was made.” To the admission of evidence of these declarations the contestees objected, and *7 the court sustained the objection; to which exception was taken.
The counsel for the plaintiff in error, in support of this exception, cites and relies upon the cases of Aveson v. Kennaird, 6 East. 195-6, in which Lord Ellenborough refers, with approval, to a Nisi Prius case decided by Mr. Justice Heath, and the case of Wright v. Littler, 3 Burr. 1265, and to the case of Doe v. Ridgway, 4 B. & Ald. 53. These were cases in which the genuineness of the execution of certain written instruments were in issue. In each case an attesting witness to the supposed execution had died, and the party supporting the instrument, being at liberty to give secondary evidence of its execution, had proved the handwriting of such witness in the. attestation, whereby a presumption arose that the instrument had been duly executed. Declarations of the deceased witnesses were admitted impeaching the execution. The principle assigned for the admission of the evidence by Lord Ellenborough and Justice Baily was that if the subscribing witness could have been produced at the trial to prove his handwriting it must have been done; and as it would have been competent to prove, by his confession on cross-examination, his declarations as to the forgery, or, if denied, by other proof, so also, as a personal examination of the witness could not be had, his declarations might be proved in contradiction to the presumption of a due execution of the instrument from the proof of his handwriting as a subscribing witness. The case of Wright v. Littler, the origin and foundation of the others, was peculiar in its facts, and according to the report of the same case in 1 W. Bla. 349, Lord Mansfield stated that no general rule could be drawn from the admission of the evidence in that particular case.- The opinion expressed upon the point in question, is supposed to have been influenced by an opinion which prevailed at that time as well as at the time of the Nisi Prius decision of Justice Heath, that any declaration in extremis was admissible, on the ground that they were made under a sanction equivalent to an oath. An opinion which subsequent decisions clearly show to have been errone *8 ous, and, that this exceptional rule of evidence is properly applicable only where the death of the declarant is the subject of the charge, and the circumstances of the death the subject of the declaration. Rex v. Mead, 2 B. and C. 605.
These cases came under review, and were critically examined in Strobart v. Drydan, 1 Mees. & Welsh. 614, and were substantially overruled. The suit was an action on a covenant in a mortgage deed, to which there was a plea of non est factum, tried before Lord Abinger in the summer of 1835. A man named McCree, who, on the face of the instrument, appeared to be the subscribing witness, being dead, the execution of the deed was proved in the usual way, by evidence of his handwriting. Mr. Cresswell, for the defendant, offered in evidence declarations of McCree, of facts tending to prove that the deed was a forgery, which Lord Abinger rejected; and, on a motion in the following term, a rule nisi for a new trial was granted, which was argued, and the court, having taken time to consider the question, sa,y (Parke, B.), “We, who heard the argument, are all of opinion that the evidence was properly rejected.” After examining and overruling one of the grounds upon which the admissibility of the evidence was argued, the court proceed to say: “ The other ground, and the principal one, on which the most reliance was placed, was, that it was in the nature of a substitute for the loss of the benefit of the cross-examination of the subscribing witness, if he had been alive and personally examined; by which, either the fact confessed would have been proved, or, if not, the witness would have been liable to be contradicted by proof of his admission; and it was contended that every declaration was admissible which might have been given in evidence to impeach the credit of the witness himself on his personal examination. Let us inquire what authorities are in support of this exception.” After examining the authorities referred to, and declaring that, by the adoption of the rule, the rights of parties under wills and deeds would be liable to be affected at remote periods, by loose declarations of attesting witnesses, which those parties would have no opportunity *9 of contradicting or explaining by the evidence of the witnesses themselves, Parke, B., adds — “ The party impeaching the validity of the instrument would, it is true, have an equivalent for the loss of his power of cross-examination of the living witness; but the party supporting it would have none for the loss of his power of re-examination. And when the great benefit to the administration of justice, of abiding by general rules, and acting upon general principles, is taken into consideration, we feel no doubt but that it would be inexpedient to sanction this additional exception to the established rule of evidence.”
This case has received the approval of Mr. Phillips, in the last edition of his Treatise on the Law of Ev. (vol. 1.- 286), and of Mr. Greenleaf in his work (vol. 1, sec. 126).
The last-named case is unlike the one before ús, as in the latter, the testimony of the witness, whom it was sought to impeach, had been taken and was read on the trial. But if the presumption of due execution, arising from the witness’ voluntary act of attestation, done without any particular sanction, can in no degree be rebutted, or its credit impeached by his subsequent declaration, it would seem a fortiori that the same principle would forbid their use to destroy the credit which would be otherwise due to his testimony, delivered under the sanction of an oath in a judicial proceeding, in obedience to legal requirement.
In the case of Losee v. Losee, 2 Hill, 609, cited by counsel for plaintiff in error, the impeaching evidence received, was in regard to the general character of the attesting witness. Of course there could have been no objection to impeaching the testimony of the witness in the present case by that kind of evidence, but the question here is, whether the declarations offered could legitimately have had that effect.
The act relating to wills provides, that, in admitting a will to probate, the court shall cause the witnesses to be examined in open court, and their testimony reduced to writing and filed; but if their presence can not be secured they are to be examined by some suitable person, or uersons, under a commission.
*10 The twenty-third section provides that “a certified copy of the testimony of such of the witnesses examined upon the original probate, as are out of the jurisdiction of the court, dead, or have become incompetent since the probate, shall be admitted in evidence upon such trial.” But for this provision of the statute, such evidence would not be competent. The statute gives it the effect of a deposition. • It was under this section that the testimony of the witness Bowen was admitted.
It is clearly established in England and in most of the United States, including our own, that before a witness can be impeached by proving statements out of court, at variance with his testimony, he must be first inquired of, upon cross-examination, as to such statements, and the time, place and person involved in the supposed contradiction. King v. Wicks, 20 Ohio Rep. 87.
Without controverting this as the general rule, it is, however claimed, on behalf of the plaintiff in error, that this case forms an exception; inasmuch as the testimony, taken on the probate of the will, was without the ordeal of a cross-examination, and the death of the witness, prior to the final trial, had cut off the opportunity of such examination.
It may here be remarked that one of the counsel of the defendants in error insists, in his argument, that the witness was, in fact, fully cross-examined when his testimony was taken. But the record, as to this matter, shows no more than has been already stated, and to the record alone our inquiries are confined.
But to recur to the claim that this case forms an exception to the general rule. The terms in which the rule is expressed imply no such exception; and one of the questions submitted to the twelve judges in the Queen’s case, was, whether, when the alleged impeaching matter was discovered after the witness had been examined, it might not be given in evidence without calling back the witness ? The answer, delivered by Chief Justice Abbott, was, that the only effect of a subsequent discovery would be to allow the witness to be called back for further cross-examination, if still within reach. And they *11 were all of opinion, that, according to the usage an'd practice of the courts below, and according to law as administered in those courts, the proposed proof could not be adduced without a previous cross-examination of the witness as to the matter thereof. 2 Brod. & Bing. 312, 313.
And in view of the claim that has been sometimes made, that the judges in this case introduced a new rule of practice, it is worthy of remark that they did not regard themselves as doing so; for they stated it to be the usual practice of the courts, to which they were not aware of any exception.
Mr. Phillips, in the edition of his work on evidence to which reference has already been made, states it as an indispensable condition of the rule; and, the same has been held in New York. Stacy v. Graham, 14 New York R. 499.
If the case, where the contradictory statements are discovered after the examination of the witness, and so late as to place his recall beyond the power of the party, does not form an exception, no good reason is perceived why the case should, where his testimony, taken in any other legal form, is used, and the opportunity of cross-examination has been lost by his death. It can not depend upon the diligence of. the party; for no laches would exist in the former case, and might not in the latter; nor upon mere convenience, otherwise, when, at the trial, the discovery came too late for the recall of the witness, the impeaching testimony would be admitted.
The true principle of the rule, seems to be, as was declared by Comstock, J., in Stacy v. Graham, that the witness, whose testimony is to be impeached, and the party to be affected thereby, are entitled, of right, to any explanation which the former can give of the statements imputed to him. And it seems to us, that to allow the death of the witness to work an exception, would be to destroy the principle on which the rule rests, and deny the protection which it was designed to afford. The party impeaching the witness would have an equivalent for the loss of his power of cross-examination, but, as remarked by Parke, B., in Strobart v. Drydan, the party supporting him *12 would have none for the loss of his power of re-examination and explanation. In relieving one party of -a supposed hardship, an equally serious one might be inflicted on the other. The proposed evidence is independent, collateral matter. It is not a legitimate means of proving the general character of the witness for truth; which is, of course, open to the party seeking to impeach the testimony. Such declarations have all the infirmity of hearsay; and though they are not offered as evidence of the truth of the matter declared, and thereby, as directly tending to prove the matter in issue, yet, if admissible, it is because they should have a material bearing upon the determination of the issue. Without, therefore, the opportunity to the witness of explanation, or, to the party against whom offered, of re-examination, we are of opinion, that, the supposed declarations lack the elements of credibility which they should possess, before they can be used, legitimately, to destroy the testimony of the witness.
The rule has frequently been applied to depositions, also,— to the case where it was proposed to impeach the testimony contained therein by showing that the witness, subsequently to his examination, had made statements inconsistent with his testimony, or said that what he had sworn to was false. Stacy et. al. v. Graham, 14 New York R. 293; Kimball v. Davis, 19 Wend. 437; 25 Wend. 259; Conrad v. Griffey, 16 How. (S. C.) R. 41; Unis et al. v. Charlton’s adm’r et al. 12 Gratt. R. 484.
In Kimball v. Davis, the court say : “ The declarations of witnesses whose testimony has been taken under a commission, made subsequent to the taking of the testimony, contradicting or invalidating their testimony as contained in the depositions, is inadmissible in evidence, if objected to. The only way for a party to avail himself of such declarations is to sue out a second commission. Such evidence is always inadmissible, until the witness whose testimony is thus sought to be impeached has been examined upon the point, and his attention particularly directed to the circumstances, so as to furnish him an opportunity for explanation or exculpation.” The *13 opinion of the court in this case was delivered by Oh. J. Nelson; the same judge who decided Losee v. Losee, cited by plaintiff in error, and before referred to. The decision was affirmed in the court of errors (25 Wend. 259), Chancellor Walworth delivering the leading opinion.
We are aware that the application of the rule to depositions has, in some cases, been denied, or applied with various modifications. Downer et. al. v. Dana, 19 Verm. R. 344; Flecher v. Henley, 13 La. An. R. 191; Roberts v. Cillvies 6 Ired. R. 223; Hooper, adm’r. v. Moore, 3 Jones (Law), 428.
But a majority of the court are of opinion, that the weight of authority, as well as the principle upon which the rule is founded, requires the application of the rule to the present case; and that the district court did not err in overruling the proposed evidence.
3. The third assignment of error is based on this paragraph in the bill of exceptions :
“The contestant also offered Thomas Shepherd, who was sworn as a witness and testified that he lived near to the deceased [William Runyan], and frequently saw him about the time, and before the time, of making the will; that, a short time before the making the will, deceased called at his house at midnight; and testified to what he said, and how he acted; and that, the night before the making-the will, he was called upon by Francis Bowen, about sundown, and requested to meet him at the testator’s, early the next morning, to witness the will of William Runyan. He did not go, however, to witness the will.
“And, thereupon, the counsel for the contestant propounded the following question to the witness: ‘ State what your opinion was, on the evening Bowen called upon you to witness the will, as to the sanity or insanity of William Runyan, or his capacity to make a will.’ To which question counsel for the contestees objected, and the court sustained the objection.”
To this question there are two valid objections apparent.
In the first place, it sought the opinion of the witenss, not at the time of the delivery of his testimony, but the opinion *14 he had entertained several years before, and which subsequent consideration and reflection may have satisfied him was erroneous. This was on the examination, in chief, by the party, of his own witness. As well might he have claimed to prove the occurrence of facts by interrogating the witness as to his understanding, or recollection, in regard to them years before, instead of at the time of his examination.
Secondly; The question called upon the witness to state what his opinion was as to the capacity of the testator to make a will? This branch of the inquiry involved a question of law and fact, and, to the extent that capacity was involved in the issue, the very question to be determined by the jury. It, furthermore, assumed that the witness knew the degree of capacity which the law required for the performance of the act of executing a will.
The foregoing are all of the assignments of error noticed by counsel in their arguments, and the only ones, upon which we deem it necessary to remark.
The judgment will be aflSrmed.
Brinkerhoff, C.J., and Scott, J. concurred.
Ranney and Wilder, JJ., dissented as to the second proposition of the syllabus.
Brinkerhoff, C.J.
If- we look at the principal question decided in this case simply as one of judicial policy, without reference to the authority of adjudged cases, it seems to me that a reason, in addition to any that I have yet heard stated, may be found in favor of our conclusion in the following considerations :
“Dead men tell no tales;” and if the rule be once established that the testimony of a deceased witness may be impeached by giving in evidence declarations alleged to have been made by him out of court differing from those contained in his testimony, and when he has had no opportunity for explanation — when all opportunity for explanation by him *15 has passed away — when few will have the motive, and none the power to vindicate his integrity and truthfulness such as he would have if living, it seems to me that temptations to perjury and subornation would be not a little increased by the comparative impunity with which those crimes might be committed. Such declarations, at best, are the lowest kind of evidence ;• and the administration of justice will suffer little in any case by their exclusion; while, if admitted, and they are falsely alleged against a dead witness, it would be hardly possible ever to disprove them.